I'm Robert Walker. I'm here on behalf of Jose Cortez-Arias. I think the central issue in this case is whether or not the district court was correct in finding that the Weinert case, which concerned the career offender... Let me focus you right now on something that's bothering me. I once represented a guy who used to shoot at his son's house whenever he got drunk. He had bad relations with his two sons. And, gosh, it was really dangerous. I mean, 30-06 bullet would go right through the house and kill somebody. You knew it. And I'm thinking the danger is just like arson, which is in the statute, in that list of crimes in the statute. With arson, maybe nobody will be home. You may think that the building's empty, but somebody's there that wasn't supposed to be there. You didn't know they were there, and you kill them. And shooting at a home is like arson in that maybe you won't hit anyone, maybe you will. But since people are in and out of homes and you can't tell whether somebody's home sometimes, too risky. Tell me why we can't analogize it to arson. Well, arson, I believe, is one of the crimes that's specifically mentioned. I may be wrong on that. That's right. It's in the list in the statute. And I think if you start looking for analogies to crimes that are specifically listed, you could probably find an analogy that would work for a lot of crimes that aren't mentioned specifically. And I think what we have in this case is that it was an aggravated felony rather than a crime of violence. And I think you have to use the definitions that they give you. In the career offender section, you have a broader definition. I'd like to follow up on Judge Kleinfeld's question, if I may. All right. Now, Weinert was referring to the 246 or what was the other of the state? We have 246, right. But if we look to 2L1.2B, subsection 3, the words are used that has an element, the use, attempted use, or threatened use of physical force against the person of another. When you shoot into a dwelling, whether or not it is inhabited, it seems to me that there's an element of attempted use or threatened use of physical force. Because dwelling places are where people live. And even if you know the neighbors say they're not there, therefore you're going to shoot up their house while they're gone, there could be somebody there or there could be somebody who's come in. Why isn't this a threatened use of force? Well, because it doesn't matter if the person is there and there wasn't any evidence, I believe, well, we didn't get that far as to whether or not there was anybody in the house. But, you know, in some of the other areas where they define crime of violence, they'll talk about the use of the potential risk of injury to persons or property. And in this case, or in the definition in the illegal reentry section, they only say the potential risk of injury to a person. And I think we'd just be guessing as to whether or not a person was in that house or wasn't. Why should someone who has the unfortunate circumstance that someone ends up in the house and that's deemed to be an aggravated felony as opposed to the luck of the draw, gee, the house is empty. So that's not an aggravated felony. It's the act of shooting into a dwelling place that disturbs me here. Well, you know, if we had gotten a little further into facts in the pre-sentence report, this fellow shot a gun over the heads of some gang members. He shot in the air. When the bullet came down, it hit a house. He did plead guilty to shooting at a house, so I suppose that, you know, he admitted that he did it. But the facts were that he was shooting in the air and it happened to hit a house. Now, I don't know that you can really say that he intended or even assume that he might be hurting somebody that was in that house. And I think you have to stick to the definitions they give you, and they make distinctions depending on what type of federal crime you're convicted of. And for whatever reason, for the purpose of illegal reentry. He killed somebody in the house. It would have been manslaughter, right? It would have been a reckless disregard of human life. I would think probably manslaughter. It might even be more serious. Maybe if he'd been shooting at a guy and missed him and the bullet went through the house. But I think you have to look at the word element. They say it has to be an element of the crime that there is the use, attempted use or threatened use of physical force against a person or another. Now, that doesn't mean that – well, when they say element, the way I take that, if you don't have that fact, then the crime hasn't been committed. You may have conduct that involves the use of force against another person, but it may not be an element of the crime. And I – The force against the person of another is the language in the definition. And in contrast to the 4B guideline for poor offenders where there's a definition that covers risk of injury, the 2L definition doesn't say risk of injury. It just says force against a person of another, which is why you are using the same language. Yes. The definition doesn't say there has to be bodily harm. And shooting into an inhabited building, even if no one is there, is in a commonsensical way a violent act. So I guess my question is, if we take a functional analysis of what these guidelines are aiming at, why wouldn't we consider shooting into an inhabited building a violent – a crime of violence, even if someone isn't in the building at that time? Well, you know, they could have. But for the purpose of crime of violence, for purposes of illegal reentry, they didn't. What's the standard that our law says to follow in terms of when and to the extent to which we're bound by the definitions that are given by the commission? Well, I think you just have to look at the plain meaning of the statute. And in this case, I don't think there's anything ambiguous about the definitions. And I think if you lay them side by side, you can see that in some areas of the guidelines, you're going to have a broader definition of the same term than in other parts of the guidelines. So to me, I just look at what the definition says and then try to plug the facts into it. Let me ask you about a reading. I tend to use a USTEM reading, a USTEM generous reading a lot, because it represents the way people talk. If you say, what do you have in the way of candy, ice cream, pudding, or other stuff, you're probably asking about desserts. And I look at this, crime of violence means any of the following, and it includes arson, burglary of a dwelling, attempted use or threatened use of physical force against a person or another. I tend to think that when they have these general words at the end, it's kind of like my other stuff in the dessert list, attempted use or threatened use of physical force against another. And so I look at the specifics, see what kind of thing they're talking about, and I see arson and burglary of a dwelling. Now, the reason that burglary in a dwelling has always been treated by the common law as far more serious than other burglary is that there's a risk that somebody will be home and that there will be a violent confrontation. The arson is the same thing. It may be that the only purpose of the arson is to burn an uninhabited building and collect insurance, but there's a risk somebody will be in there and will die or a fireman will have to put out the fire and will die. And it seems like where the California statute makes it a crime to discharge a firearm at an inhabited dwelling house, and then it says inhabited means used for dwelling purposes, whether occupied or not, it's just like burglary of a dwelling, which is burglary of a dwelling whether anyone happens to be home or not. Why isn't in a USTEM generous reading like that possible? See, I'm thinking we'll look sort of stupid to most people if we say shooting into a house isn't violent. And it doesn't square with common sense. If we have to do it because that's what the law says, okay, we'll do it. And that's what life's ten years for. But if the law doesn't say that, we don't have to do that. And to me, it looks like I can just say it's kind of like arson and burglary of a dwelling. Well, when you talk about common sense, that's what I said to my wife yesterday. I said, you know, I think that I have the definitions on my side, but I think maybe the prosecutor has common sense on his side. You know, I can't disagree with you that it seems that shooting a gun into a house, whether it's occupied or not, should be a crime of violence, but it is. I quit representing that guy. He was a regular too. But it isn't. It isn't under the definition that they tell us we have to use. Now, if we start bringing in any crime that is similar to the ones that are specifically mentioned, I think that creates more confusion, more litigation, as to whether or not it really meets the definition of crime of violence for this purpose. So here's the ultimate question, I guess, that I've got. I think you have a good argument to distinguish Weiner, as I said, because of the different definitions. And we're supposed to follow those definitions unless they're contrary to the plain language of the statute. That's what I think it is. I'm sorry. I didn't hear the last part. We're supposed to follow the definitions. I misspoke. We're supposed to follow the definitions and heed them unless they're contrary to the plain language of the guideline. The plain language of the guideline invokes its application for a crime of violence. And now we've got this definition saying it means all these specifics, including arson and burglary of a home. But when it gets down to the general statement at the end, it's got this physical force against the person of another. It doesn't use a general term like risk, which supports your argument. But if they've defined a crime of violence to not include something that's obviously violent in the crime, like shooting into a map as well, why wouldn't that definition be contrary to the plain language of the 2L guideline? If the common sense meaning of violence would embrace shooting into an inhabited dwelling, whether someone's there or not, why wouldn't it be required to say they just screwed up in there if they limited the definition? Assuming that force against the person of another isn't shown here, that they've just screwed up their definition. I know you're over your time, but we're taking you there. I'd like to hear your argument, because you've done an excellent briefing and argument. It's a hard case. See, I don't think we should ever assume that they just screwed up on a definition. I mean, I've felt that way before, but I think, again, in order to have an orderly system of justice, you have to rely on the definitions and the rules that they give you to work with. Why don't they have the same definition for crime of violence in every section of the guidelines? Why do they have a different, a broader definition for career offenders than they have for illegal reentry? My guess is that because people that reenter the country illegally often haven't really done anything that probably any one of us wouldn't have done if we were in the same situation. And a lot of times you're punishing people that haven't really done something that most of us would think is a criminal act. So I think maybe they're willing to give them a little more leniency in the definition. That might be one explanation. I ask myself that question. Why do they have different definitions for the same term? And it's not just in these two sections. There's several different places. It seems like you see definitions that will say a potential risk of injury to persons or property. In other places it will just say a potential risk of injury to persons. Why did they add property in one part of the guidelines and keep it out in others? I don't know, but to me you have to use what they give you. And when you start trying to read in meanings that aren't explicit and when the language is very clear, I think you're just making things muddier. You're already over time, but I'm going to take the pleasure of asking you. I had the same conversation with my law clerks that you had with your wife. And we went from eustem generis to expressio unia. The expression of one thing is the exclusion of all else. But I pose the question of what the plain word mean, the element, the use, attempted use or threatened use of physical force. Why isn't shooting into a dwelling the threatened use of physical force? Using exact words of the statute. Well, again, because the presence of another person is irrelevant. They don't have to be there. And so if you shoot into a building when they're not there, that's really not a threat to that person's person. It's a threat to their property, but not to the person. What if somebody had been in the building? Would that make a difference? Well, now this is where I think you would get into the categorical approach as compared to the modified categorical approach. And we should have gone farther. I think Judge McKibben was wrong in finding that categorically this was a crime of violence. He should have gone to the next step and said, applying the modified categorical approach, I will now look to see whether or not the specific conduct, you know, whether or not a person was in the building. And we didn't get that far. And that's why I think it should be remanded back, because it may be that he would ultimately find that this is still a crime of violence by applying the modified approach and looking at some of the underlying facts. But we never got that far. So what you're asking us to do is to remand it? Yes. All right. Thank you. Am I finished? Thank you. Thank you. Thank you, counsel. I want to stay around just in case we ask you to respond to something. All right. Even though your time is exhausted. May I please the Court? My name is Robert Don Gifford, and I'm an assistant U.S. attorney from the District of Nevada. And just briefly, a couple of things that I would ask. Will you please speak up? Oh, I'm sorry, ma'am. Thank you. I'm sorry. Talk more slowly, too. I didn't actually understand anything that you just said. My apologies. My name is Robert Don Gifford, and I'm an assistant U.S. attorney from the District of Nevada. And I did want to point out just a few things. I would agree with some of the Court's questions and her comments and her curiosities as to what would actually contemplate an element or threatened use. Help me a little more with the grammar. I don't know quite what I'm going to do on this, and so I ask your opponent your questions and I'm going to ask you his. When I read this definition at B3, a USTEM generous reading would be a whole lot easier if it said, or any other offense, but it doesn't. It says, or any offense. And what was done is just as dangerous as burglary of a dwelling, arguably as dangerous as arson, or at least some arsons. It's a little hard for me to deal with this language has as an element. I assume they're using element in the technical sense. They use attempted use or threatened use of physical force against the person of another, where the statute says being used for dwelling purposes, whether occupied or not. If it said, or any other, then I could say, well, it does in the same sense as a burglary. But it doesn't say other. And it does use the technical word element. How do I deal with that? The defendant attempted to find out Weinert by saying, Weinert strictly applied to 4B1.2, which deals with the firearm cases. Since we are an illegal reentry case, we're under 2L1.2. However, the language in both 4B1.2 and 2L1.2 has the exact same language that has an element, the use, attempted use, or threatened use of physical force. I just don't see that Weinert's much good to you. It's a brief per curiam opinion on a different guideline section with different language. In part, the 4B provision also has as an, in its definition, disjunctively or, it says or, so it's got the same language about use of force against the person of another, but it disjunctively has language or that poses a threat. Yeah, it says or otherwise involves conduct that presents a serious potential risk of physical injury to another. That's easy. So Weinert can be distinguished, and I don't blame you for arguing it, and I don't blame the district court for following it. And there's a substantial, you know, body of thought that would urge that we shouldn't lightly have different definitions of these terms of the same words, crime of violence, in two guidelines. But we do have two different definitions. So I think you, to help me at least, you've got to go past Weinert and get to the actual language of the guideline and the definition of this guideline and why we should find this a crime of violence in the reentry context. I think it's a very difficult issue, so you can't just glide past it. I guess my best argument and my two strongest cases that would support this would be, and it deals with the Medina-Mayelia, and forgive me for butchering the pronunciation, the Pereira case. The Ninth Circuit has repeatedly held that there are crimes that are in of itself inherent, per se, crimes of violence. The defendant did try to distinguish it to say that in subsection 201.2 it now is specifically listed, but at the time Medina-Mayelia and Pereira were decided, you had to have both elements. So it had to be on the list and it had to have a threatened use. So the court at that time under those guidelines said even though it is in the list, but because in those cases it was a consensual sex, there are crimes that are in of itself inherently crimes of violence. Those are both sex with a child cases? Yes, Your Honor. And I believe both of them may have been consensual. I know one was a consensual relationship. But the Ninth Circuit has there, we've got this section, sexual abuse of a minor. Crime of violence includes sexual abuse of a minor. Correct. It strikes me as not posing the same difficulties. Well, it did when the cases were decided because when they were decided, the guidelines then required both that it be on the list and it have an element of the use, attempted use, et cetera. So at that time the argument before the court in 2003 or 2002 was that it's on the list, yes, but there is no element of attempted use, use, et cetera. So how do we deal with this? The guidelines were amended subsequently afterward where we now have a list of crimes or we have the element of use, attempted use, et cetera. And I think that's how the Sentencing Commission has set things up. And, of course, I think the ‑‑ Well, the court, I can't exactly say. I'm just following those cases. Oh, I understand. And ‑‑ Let me give you another issue and hear what you think about it. This really ‑‑ this is against the penalty. It kind of goes down the line that Judge Nelson's questions raised. And that is, we have an element of this statute here that the actual use of physical force against an inhabited dwelling. And that is the minimum element of this California statute. Whereas actual force against an inhabited dwelling, one that's customarily inhabited, whether there's someone in it at the time or not. Why isn't the actual use of physical force against a home, an inhabited home, why isn't that in itself a threatened use of physical force against a person? Because there might be a person in there, there might not. So, can we answer, can we meet the definition in that way? I would say yes, Your Honor. And the fact is, is that it's exactly along the same lines as an arson or a burglary. Those are crimes of violence against another, even though there's no requirement that someone be there or to require to show that there is an act against a person. And while the language, while the definition of the California statute also says whether or not there was someone there at the time or not, that's why we, that's why kind of circumvents or I guess returns back to the Weiner case. Even though it's under a different section, I think that the Weiner case still throws the same amount of credibility, the same sort of analysis, because there was the same attack for the very same reason upon that California statute. And I guess that's where the Weiner statute can come in. And I know that there is some difference in the definitions. However, the language of the guidelines at the time Weiner was decided is identical to 2L1.2 as it is today, that they both include, it has the element of the use, attempted use or threatened use of force against another. When you take, so, but I guess I've been thinking threat meant like if I brandish a gun at you, that threatens the use of force against you. But this reads threat differently to mean I do something that's not directed by my intent at a human, but at some object, but it nevertheless poses a great risk to a human. I guess kind of like if I'm dropping big rocks off the overpass onto the freeway. Yes, Your Honor. The crime itself, and I guess going back to the same analysis that was used with the consensual sex cases with Medina Maya, it's the inherent risk in of itself per se makes it a crime of violence. And I think that when you do, I guess what I as the government would ask the court to do, would to include an analysis that would encompass that there are such crimes outside of those, even those of the consensual sex. You know, I have a problem with that approach, so that things like dropping rocks off the freeway overpass would count, or throwing snowballs at cars, windshields. The problem is all kinds of things are dangerous, but they aren't crimes of violence, like drunk driving, for example. I think the Supreme Court just decided that it isn't. It didn't? But it sure is dangerous. It kills a lot of people. It threatens people's lives. Just the person doing the drunk driving, that's not what he has in mind. Yes, Your Honor. However, the court does have the option if a district court judge is uncomfortable with a circumstance such as if someone is recklessly throwing snowballs, or maybe some of the acts would constitute such. Even though Taylor prevents us from looking at the specific acts, the case Corona-Sanchez allows us to take the modified categorical approach to go into those cases where a judge wouldn't save your case with a modified categorical approach. I don't think the modified categorical approach gets you anywhere in this case, because it doesn't really let you go back and reexamine all the facts of the incident. You can just look at the charging document or the plea colloquy, and it's so limited. It's not. In this case, the element of the statute doesn't involve just anything that's risky. It involves violent physical force. Doesn't it? It does, Your Honor. So in response to Judge Kleinfeld's concern, if we can somehow, and I don't know if we will do this or not, but if we do decide to extend the guideline to shooting into an inhabited dwelling and either bring that within the meaning of this definition by our interpretation of it, or rest on the plain language of the guideline, I don't see that it opens the door to applying this guideline in any case where there's a risk to someone like drunk driving, because the California statute involves an inherently violent act of shooting into a dwelling that people live in. Yes, and I apologize. I didn't mean to take it that far, but I was just the thought that stuck in my mind is, would there be any danger of this if we got into a reckless snowball? I have another question, and when we ask these questions, we haven't decided the case. So when I asked Judge Kleinfeld, I asked the appellant questions that I think are against his theory, and I want to ask you some against your theory. The definition says crime of violence means any of the following. The 2L definition, and then it's got this list of specifics, followed by the general disjunctive language at the end, local law that has as an element the use or attempted use of that use. If it said crime of violence includes, then the case would be easy, because we would not have to interpret the California statute as coming within one of the things that's listed in subpart B3. But since it says means, don't we have to either bring this California statute and its minimum required elements either within the definition, one of the items listed in subpart 3, or we have to say that this definition is contrary or too limiting in light of the plain meaning of the guidelines? It's got to be one or the other of those things, don't it? I would agree. Yes, I would agree. I do think the California statute, though, would still fall within that catch-all language at the very end of the… Is your theory that the California statute comes within the final language, not within any of the other crimes listed? Yes. So it's not an aggravated assault, and it's not – I had contemplated that, and I didn't think that that would be one that the court would be willing to consider. It would be better if the statute had used the language includes. In fact, at one time, I believe, during the earlier versions of the guidelines, they did have the word includes, but when they restructured everything, they did not use that specific term. Maybe they say means and limited because it's a big deal when you do a 16-level… 16-level. Counsel, I keep thinking about that drunk driving because the Supreme Court just decided on it last term. Do you happen to recall if that's the same guideline? If I recall, Your Honor, and please forgive me if I'm incorrect, I think that case did not go into the guidelines itself. I think it was specifically going into an immigration issue, not into the criminal issue that uses sentencing guidelines. I think it did not use this guideline. I'll check it, but I just wanted to know your recollection. My recollection is that it did not go into the guidelines. If I recall, it was a Rehnquist opinion, so it didn't have a whole lot of philosophizing. It just said drunk driving isn't a crime of violence, goodbye. And I'm not quite sure how to interpret and apply it in other circumstances. I think what that case got into was whether or not that was more or less for a deportation proceeding in the immigration court, not so much as an illegal reentry, but that I think is, I guess, as far as a future argument, which would be. . . Do you understand why I'm asking you about this? Yes, the negligence. Drunk driving, in terms of risk of killing people, drunk driving is at least as great, certainly comparable to shooting into a dwelling house. The thing about shooting is, as opposed to driving, is the mass. . . And the diameter of the bullet is a whole lot less square inches than the front of a car. So you're just a whole lot more likely to hit somebody with a car. And even if there are people in a house and there are people on a road, you're more likely to hit somebody with a car. It's hard to hit anything with a bullet. With a car with a DUI, if it's just a DUI in and of itself, then I think that gives a very limited restriction on what the person actually had done. If it was a DUI, in some states has DUI causing personal injury, then I think there might be a different analysis. I think it might have been in that Supreme Court case, but I'm not sure I would agree with you that it makes a difference. I mean, the moving car and the flying bullet, they're both real dangerous before they hit anyone. But in that case, they did distinguish between DUI with injury and DUI without. Since we've all gone over time, I have one last question I'd like to ask. It appears clear to me, not clear, the language is different in 2L1.23, different from 4B1.2. And 4B1.2 says it presents a serious potential risk of physical injury to another, which would make this easy if it were in 2L1.1. But they didn't put it in 2L1.1. As your opposing counsel said, this is what we've got, and we have to follow what we've got. And if I may, I hate to go back to it, but the Weiner case, when it was decided in 1993, under the 4B1.2 had the exact same language in it. Subsection 1 has the element of the use, attempted use, or threatened use of physical force against the person of another. That is the exact same language that is used in the catch-all phrase of 2L1.2. So even though they're different statutes, that language is there in both sections. And when the court said this is a crime of violence, and it looked at 4B1.2, the first part included that. Now, subsection 2 of 4B1.2 does have the or otherwise involves conduct that presents a serious potential risk of physical injury to another. I agree, that is separate and apart. It's not in the guidelines that are relevant to this case. Exactly. But, however, when Weiner was decided, the guidelines used the exact same language that is applied to this case today. But Weiner referred to 246 at the time, the Calpino Code. Right. And that is the same code as before today, Your Honor, the exact same California statute. And 4B1.2 refers to career criminals, and we don't have a career criminal in this case, do we? Correct. Correct. I'm just referring to the language itself that is used in 4B1.2 that made that determination is the exact same language that is now found in 2L1.2 in the catch-all phrase at the very end. All right. Thank you. Thank you very much. Thank you, counsel. I sort of thought that might happen. We have some questions for you. Could you let Kelly go on for so long? I'm sorry? I suggested the other time only, you know, if you have some specific response to any of the arguments that you like to make. Well, in regard to the Medina male case, children under a certain age cannot consent to having sex with an adult. So even though it may appear to be consensual, it really isn't. And so in that case, that would be a use of force against the person of another. And I think that distinguishes that case. In regard to what he just said about the Weinert case, maybe I misunderstood, but I think Weinert is very clear that that case turned on the potential risk of physical injury to another, not on whether or not the crime or not on whether or not the elements. When you read Weinert, they talk about a potential risk of physical injury to another as one way to satisfy the definition of crime of violence. And that part doesn't appear in the illegal reentry section. And I think it's clear from Weinert that they decided it was a crime of violence because they felt or they found that shooting into a building created a risk to others. I mean, that's what it says. They use the word risk, and they refer to that subsection, which doesn't apply in the illegal reentry cases. So I don't think that you can say that Weinert stands. It went off on risk. Risk is in the career criminal guideline, and risk is not in the guideline before us. And Weinert doesn't stand for the proposition that shooting into a building has as an element the use, attempted use or threatened use of physical force against another person. Beyond that, I'll just answer any questions you might have. Thank you, Counsel. All right. Thank you. Thank you. You can see how much we enjoyed the real problem of codification. I can't imagine that the people that wrote the guidelines really thought about shooting at a dwelling. United States v. Torres has submitted. We'll hear United States v. Valerio.
judges: D.W. Nelson, Kleinfeld, Gould